# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

CARABIN SHAW, P.C., JAMIE SHAW,    §
*Plaintiffs*                        §
                                    §
v.                                  §        Case No.  SA-25-CA-00099-XR
                                    §
KIRSTEN CARABIN,  CARABIN LAW,     §
P.C.,                               §
*Defendants*                        §

## ORDER ON PLAINTIFFS' MOTION TO DISMISS

On this date, the Court considered Plaintiffs' Motion to Dismiss (ECF No. 16), Defendants' response (ECF No. 26), Plaintiffs' reply (ECF No. 30), and the parties supplemental briefs (ECF No. 31, 32). After careful consideration, Plaintiffs' motion (ECF No. 16) is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This is a trademark case stemming from a dispute between two former partners at a law firm. That firm, Carabin Shaw P.C. ("CS"), and its current president, Jamie Shaw, hold a federal trademark over "Carabin Shaw." ECF No. 1 at 3. They brought this action against former partner Kirsten Carabin and her new firm, Carbin Law P.C., ("Defendants") for trademark dilution based on comments on Defendants' website. ECF No. 1 at 4–5. Defendants counterclaimed seeking *inter alia* cancellation of Plaintiffs' trademark.

At base, Defendants' counterclaims rely on the theory that CS lacks a right to use Carabin's surname as a component of its business name. Plaintiffs contest this theory and consequently ask the Court to dismiss Defendants' counterclaims.

1

## I.  Carabin's Departure from CS

Jamie Shaw and Kirsten Carabin co-founded CS in 1995 while married. ECF No 16 at 3; ECF No. 14 at 5. The firm specialized in personal-injury litigation and registered the internet domain "carabinshaw.com" to support its business. ECF No. 16 at 3. Despite a 1999 divorce, Shaw and Carabin continued to work together until 2003, when Carabin resigned from CS and "retired" from the practice of law. *Id*. at 3.

At that point Carabin sold her interest in CS pursuant to a "Stock Purchase Agreement." *See* ECF No. 16-1. That agreement began with "recitals" that included the following:

> WHEREAS, Carabin acknowledges that the Company's well-being is largely contingent on the goodwill associated with the name "Carabin & Shaw", and Carabin has agreed to engage in whatever action is necessary in order to allow the Company to maintain legal use of the name "Carabin & Shaw" despite Carabin's departure from the Company, including an acknowledgement that Carabin has retired from the practice of law . . . .

*Id*. at 2. The agreement also stated that Carabin was selling "all [CS] shares" and "all interests in all the assets" of the firm. *Id*. at 3. Carabin further "assign[ed] to [CS] all her legal, beneficial, and other rights." *Id*.

Besides parting with her ownership and assigning her rights, Carabin made three further covenants in the Stock Purchase Agreement that are relevant here. First, she "agree[d] to engage in whatever action is necessary in order to allow [CS] to maintain legal use of the name 'Carabin & Shaw.'" *Id*. at 6. Second, she agreed not to compete with CS for a period of five years. ECF No. 14 at 15; No. 16-1 at 7. Third and finally, she agreed to make two public statements announcing her retirement and distancing herself from CS. ECF No. 16-1 at 8.

In return for this sale and these covenants, CS paid Carabin $375,000. *Id.* at 3.

## II. Litigation of Stock Purchase Agreement and Resulting Settlements

The Stock Purchase Agreement was the last word between the parties until 2008. At that time, Carabin sued CS and Shaw for failing to make payments pursuant to it. ECF No. 16 at 5; ECF No. 14-3. The parties settled. Carabin sued again in 2010. Again they settled. Both settlement agreements, attached to Defendants' counterclaim, include merger provisions stating that the settlements "constitute[d] the entire agreement of the parties and supercede[d] and replace[d] all prior agreements." ECF No 14 at 15. These settlements further affirmed that Carabin was entitled to "practice law and to use her own name for such practice." *Id*. In accordance with this, Carabin formed "Carabin Law P.C." in 2010. *Id*. at 5.

## III. Trademark Registration

CS continued to operate under "Carabin Shaw." In 2014, CS filed a trademark application for the name with the U.S. Patent and Trademark Office ("PTO"). *Id*. at 16. It did not obtain Carabin's consent before doing so. *Id.* at 2. On the application, CS left blank a field titled "Consent (Name/Likeness)." *Id*. at 3.

The PTO accepted CS's application. ECF No. 7 at 6. CS continues to maintain the trademark's registration. *Id*. After five years of use, the trademark received "incontestable" status under federal law. *Id*. at 8.

## IV. Plaintiffs' Complaint and Defendants' Counterclaims

In 2024, Carabin registered the internet domain "carabin-shaw.com" and launched a website. ECF No. 14 at 6. Plaintiffs, who have owned "carabinshaw.com" for thirty years, noticed the site and several statements that allegedly diluted the trademark "Carabin Shaw." They brought this action to allege trademark infringement under 15 U.S.C. § 1116–17 as well as trademark

dilution and cyberpiracy under the Texas Business & Commerce Code. Defendants counterclaimed for:

(1) cancellation of Plaintiffs' trademark under 15 U.S.C. § 1064(c);

(2) a declaratory judgment stating that Ms. Carabin has the exclusive right to use "Carabin" in the practice of law;

(3) fraud under 15 U.S.C. § 1120;

(4) false designation under 15 U.S.C. § 1125(a);

(5) misappropriation of Carabin's name and likeness under the common law; and

(6) tortious interference with prospective business under the common law.

*See id*. at 16–21. Plaintiffs moved to dismiss all these counterclaims. To support their motion, Plaintiffs assert that Carabin granted them permission to use "Carabin Shaw"—and Carabin is estopped from arguing otherwise—because of the 2003 Stock Purchase Agreement.

## LEGAL STANDARD

### I.  Failure to State a Claim under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the

4

relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain a recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## II.  Fraud Claims

"Claims alleging fraud and fraudulent inducement are subject to the requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *Schnurr v. Preston*, No. 5:17–CV–512–DAE, 2018 WL 8584292, at *3 (W.D. Tex., May 29, 2018). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

FED. R. CIV. P. 9(b). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. VMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). "Directly put, the who, what, when, and where must be laid out." *Id.* at 178. "Facts and circumstances constituting charged fraud must be specifically demonstrated and cannot be presumed from vague allegations." *Howard v. Sun Oil Co.*, 404 F.2d 596, 601 (5th Cir. 1968). "Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). "Although the language of Rule 9(b) confines its requirements to claims of . . . fraud, the requirements of the rule apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998).

## DISCUSSION

Defendants' counterclaims are largely predicated on whether Plaintiffs have a legal right to use "Carabin Shaw." The Court considers this question before turning to whether Defendants have alleged sufficient facts to make out each of their six claims.

## I.  CS Has the Right to Use "Carabin Shaw"

CS has a legal right to use "Carabin Shaw" based on the 2003 Stock Purchase Agreement.[1]

---

[1] The Stock Purchase Agreement is properly considered at this stage. In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto. *Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 495 F.3d 191, 205 (5th Cir. 2007). But the Court may also consider "documents that a [movant] attaches to a motion to dismiss . . . if they are referred to in the [nonmovant's pleading] and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Here, Defendants repeatedly referred to the Stock Purchase Agreement in their Answer. *See* ECF No. 14 at 2, 10, 14, 15. Plaintiffs attached the agreement to their motion. *See* ECF No. 16-1. Thus, the Court may consider it at this stage.

**A.  Applicable Law**

"Where the entire stock of a business is purchased and the business continued under its original name, it must be presumed that the purchaser acquired the goodwill of the business together with the commercial symbols of that goodwill[:] the business' trademarks and trade names." *Ferrellgas Ptnrs., L.P. v. Barrow*, 143 F. App'x 180, 187 (11th Cir. 2005); *see also Holly Hill Citrus Growers' Ass'n v. Holly Hill Fruit Products, Inc.*, 75 F.2d 13, 15 (5th Cir. 1935) ("[Trademarks] attach to and pass with the good will of a business, and, as appurtenant to it, they are freely and easily sold."); 2 McCarthy on Trademarks and Unfair Competition § 18:37 (5th ed.) ("When a business is sold as a going concern, trademarks and the good will of the business that the trademarks symbolize are presumed to pass with the sale of the business. This is an old and clear rule, universally followed.").

The fact that a business name includes a surname is immaterial: "There is no doubt that a personal name used as a trademark may be expressly assigned to another along with the goodwill symbolized by the mark." *Mercado-Salinas v. Bart Enters. Int'l*, 671 F.3d 12, 24 (1st Cir. 2011). "If a person has sold a business which is identified by his personal name, the name is an asset which he has sold, and he cannot keep commercial control of the name and keep the purchase price too." 2 McCarthy on Trademarks and Unfair Competition § 18:32 (5th ed.). This is a longstanding principle. *See, e.g.*, *Dr. S.A. Richmond Nervine Co. v. Richmond*, 159 U.S. 293, 302 (1895) ("The fact that such trade-mark bears Dr. Richmond's own name and portrait does not render it unassignable to another.").

Thus, if Carabin sold all her interest in CS's goodwill in the Stock Purchase Agreement, then she also assigned the use of her name in "Carabin Shaw."

**B.  Carabin Assigned Use of Her Surname to CS in the Stock Purchase Agreement**

Here, Shaw and Carabin founded CS under the name "Carabin & Shaw." Carabin departed that firm while it was a going concern. In doing so, she sold "all interests in all the assets" and "assign[ed] to [CS] all her legal, beneficial, and other rights." ECF No 16-1 at 3. The assets included the firm's goodwill and the name "Carabin & Shaw." The rights included the use of her name in that title. She was compensated for this exchange.

And the Stock Purchase Agreement consummated it. That contract need not have strictly stated something to the effect of, "Carabin grants CS the right to use her name in its trade name." *See Holly Hill Citrus Growers' Ass'n*, 75 F.2d at 15 ("No particular form of words is necessary to transfer them; they inhere in and pass with good will."); *Oklahoma Beverage Co. v. Dr. Pepper Love Bottling Co.*, 565 F.2d 629, 632 (10th Cir. 1977) ("No particular words are necessary for the assignment when the business and the goodwill are transferred to another who continued the operation under the same trademark.").

Therefore, considering only the Defendants' Counterclaims and the Stock Purchase Agreement referenced in it, CS is entitled to use "Carabin Shaw" as a matter of law. Defendants make two arguments to avoid this conclusion, but both fail.

**C.  The Use of "Carabin Shaw" was Not Limited to the Duration of the Non-Compete**

Defendants argue that the assignment of rights under the Stock Purchase Agreement was only limited to the term of Carabin's non-compete. Specifically, they argue that the terms of that Schedule A to the SPA shows that the parties understood that a five-year term applied to the Carabin's consent of the use of her name in "Carabin Shaw."

Schedule A outlines the non-compete agreement that Carabin consented to upon her departure from CS. In relevant part, Schedule A states, "[F]or a period of five (5) years following

the last date on which Carabin is employed at [CS], Carabin agrees that . . . Carabin shall not, without the prior written consent of [CS] . . . permit Carabin's name to be used by . . . any legal practice." ECF No. 26-1 at 3.

As a preliminary matter, it is unclear whether the Court may consider Schedule A when considering Plaintiffs' Motion to Dismiss under Rule 12(b)(6). At this stage, the Court may only consider documents that a movant attached to a motion to dismiss as they are considered part of the pleadings when they are referred to in the pleadings and are central to the claim. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Here, Plaintiffs moved and attached the SPA. Defendants referred to the SPA in their counterclaim. The SPA is central to the counterclaims. Thus, the Court can properly consider the SPA. But Schedule A was only attached to the response to Plaintiffs' motion to dismiss. Schedule A is technically a component of the SPA, but it was neither referenced in Defendants' counterclaim nor attached to Plaintiffs' motion. Thus, it is doubtful whether the Court may properly consider this document at the motion to dismiss stage.

Ultimately, the Court need not decide this question. Even if Schedule A is permissible evidence at this stage, it does not have the effect that Defendants say it does. That is, Schedule A does not include any language limiting Plaintiffs' use of "Carabin Shaw" to five years. Rather, it limits *Carabin's* use of "Carabin" in the practice of law for that period. *See* ECF No. 26-1 at 3 ("[F]or a period of five (5) years . . . Carabin agrees that . . . Carabin shall not. . . permit Carabin's name to be used by . . . any legal practice.").

Therefore, there are no plausible factual allegations that the Stock Purchase Agreement limited CS's use of "Carabin Shaw" to five years.

### D.  The 2008 and 2010 Settlements Did Not Nullify the Stock Purchase Agreement

Defendants further argue that the 2008 and 2010 settlement agreements' merger clauses negated any effect of the 2003 agreement. Those agreements purported to be the "entire agreement of the parties and supercede[d] and replace[d] all prior agreements." ECF No 14 at 15.  So according to the Defendants, if the Stock Purchase Agreement granted CS the right to use "Carabin Shaw," then the 2008 and 2010 settlements nullified that assignment.

But just because a later agreement has a merger clause does not mean that it can unwind all prior agreements between the parties. *See Langhoff Props., LLC v. BP Prods. N. Am. Inc.*, 519 F.3d 256, 263 (5th Cir. 2008) (holding that an agreement with a merger clause "was a new obligation, intended to govern the parties' rights and duties going forward and not affecting any prior obligations between these parties and any third parties"). This is particularly true when the subject matter of an earlier contract differs from that of the latter. *See Smith v. Lucent Techs.*, Inc., No. CIV.A. 02-0481, 2004 WL 515769, at 16 (E.D. La. Mar. 16, 2004) ("This Court's research did not reveal a case . . . in which an integration clause in a contract was construed to supersede all of the terms of prior contracts executed with respect to different subject matter."); *Int'l Talent Grp., Inc. v. Copyright Mgmt., Inc.*, 629 F. Supp. 587, 592 (S.D.N.Y. 1986) ("If, in fact, the two agreements are separate, a merger clause in one contract would not incorporate all prior dealings between the parties, but rather only those relating to the subject matter of the contract containing the merger clause.").

There are no allegations that the dispute leading to the 2008 and 2010 settlement dealt with CS's use of Carabin's name. Because those settlements dealt with differing subject matter, the merger clause could not have nullified the prior, fully executed Stock Purchase Agreement. And the record suggests that the parties did not understand the settlements to effectuate that. Carabin

did not object to CS's use of her name for fourteen years after the 2010 settlement (that is, until she was sued). Nor has Carabin attempted to repay the $375,000 that she received for the sale of her interest in CS.

The Court therefore concludes that the Stock Purchase Agreement had the legal effect of granting CS the right to continue to use "Carabin Shaw." Consequently, the Court need not credit any allegations or purported facts to the contrary in assessing Plaintiffs' motion to dismiss. *See Mora v. Univ. of Texas Sw. Med. Ctr.*, 469 F. App'x 295, 299 (5th Cir. 2012) ("[Plaintiff's] allegation is contradicted by the other facts alleged in the complaint, making the claim implausible on its face."). Given this conclusion, the Court now turns to whether Defendants have pled sufficient facts to support their six counterclaims.

## II. Defendants Adequately Pled Trademark Cancellation Under 15 U.S.C. § 1064

Defendants seek the cancellation of CS's trademark based on four theories. They pled sufficient facts to sustain one of them.

### A. Applicable Law

Even though Plaintiffs have the right to use "Carabin Shaw," Defendants may still challenge their registration of that name as a trademark. *See Reed*, 100 U.S.P.Q. (BNA) ¶ 196 (Jan. 27, 1954) ("Consent to register must be distinguished from consent to use. There may very well be consent to use without any consent to register.").

15 U.S.C. § 1064 states that "any person who believes that he . . . will be damaged" may seek cancellation of a federally registered trademark. The statute further provides grounds for cancellation. Four are applicable here:

(1) the mark's "registration was obtained fraudulently,"

(2) the registration was contrary to 15 U.S.C. § 1052(a),

(3) "the registered mark is being used . . . to misrepresent the source of the goods or

services," or

(4) the registration was contrary to 15 U.S.C. § 1052(c).

*See* 15 U.S.C. § 1064(c).  Federal courts can cancel trademarks. *Id*. § 1119 ("In any action

involving a registered mark the court may determine the right to registration . . . and otherwise

rectify the register with respect to the registrations of any party to the action.").

**B.  Defendants Failed to Plead Cancellation Due to Fraud**

Defendants did not plead a plausible claim that they are entitled to trademark cancellation

based on fraud.

"A party may seek cancellation of a registered trademark on the basis of fraud under 15

U.S.C. § 1064(c) by proving a false representation regarding a material fact, the registrant's

knowledge or belief that the representation is false, the intent to induce reliance upon the

misrepresentation and reasonable reliance thereon, and damages proximately resulting from the

reliance." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990) (citing *San Juan Prods.

v. San Juan Pools of Kan., Inc.*, 849 F.2d 468 (10th Cir. 1988)). Knowledge or belief in the falsity

of the representation is required; it is not enough that the registrant made a genuine mistake about

his legal right to use the word. *See Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1098

(9th Cir. 2013) ("Concord Farms has put forth no evidence suggesting that the false statement here

was anything other than the result of a simple mistake. Concord Farms adduced no evidence that

Hokuto Japan knew of the misstatement made by its lawyer or intended to defraud the USPTO.").

**Theory 1: Fraud By Nonconsent.** Defendants first allege that CS committed fraud when

it registered "Carabin Shaw" because they did not have Carabin's consent to use her name. ECF

No. 14 at 4. As discussed, Carabin consented to CS's use of "Carabin Shaw" based on the Stock Purchase Agreement. So this allegation is implausible on its face.

**Theory 2: Fraud By Nondisclosure.** Defendants also allege that CS committed fraud in registering the mark "Carabin Shaw" because CS "did not disclose that the mark consisted of a person's name." *Id*. But even if CS was obligated to disclose that the mark "Carabin Shaw" consisted of a name, Defendants have not alleged that CS's nondisclosure was more than a simple mistake. *See Hokto Kinoko Co.*, 738 F.3d at 1098 (requiring evidence that a false statement was more than a mistake and that the applicant "intended to defraud" the Trademark Office).

**Theory 3: Fraud by Misstatement.** Defendants lastly allege that CS committed fraud by "swearing to the fact that [CS] owned the mark, had authority to file the application, and that no other person has the right to use the mark." ECF No.14 at 3. But Defendants' own pleading contradicts this factual allegation.

Defendants provided the statement to the PTO that CS swore to. *Id*. at 4. In it, CS swore that it (1) *believes* CS to be the owner of "Carabin Shaw," (2) the agent who filed the application had authority to act on behalf of CS, and (3) "to the best of [CS's] knowledge no other person . . . has the right to use the mark."  Defendants have not alleged that (1) CS *believed* that it did *not* own "Carabin Shaw," (2) CS's trademark-application agent was not authorized, or (3) Carabin has the right to use the mark "Carabin Shaw." Because Defendants have not alleged that CS made a misrepresentation in this sworn statement, they have not alleged fraud on this ground.

Defendants have therefore failed to plead a plausible claim for trademark cancellation due to fraud.

**C.  Defendants Failed to Plead Cancellation Due to False Connection**

Defendants did not plead sufficient facts entitling them to cancellation of CS's trademark based on false connection. The Court may cancel a trademark if its registration was contrary to 15 U.S.C. § 1052(a). That provision bars registration of a mark if it "[c]onsists of . . . matter which may . . . falsely suggest a connection with persons." § 1052(a). This bar has four elements:

> (1) the mark is the same as, or a close approximation of, the name of another person;
>
> (2) the mark would be recognized as pointing unmistakably to that person;
>
> (3) that person is not connected with the activities performed under the mark; and
>
> (4) the person is so well known that when the mark is used, a connection with the person would be presumed.

*Piano Factory Grp., Inc. v. Schiedmayer Celesta GmbH*, 11 F.4th 1363, 1377 (Fed. Cir. 2021).

Here, Defendants have pled the first and third elements: It is undisputed that "Carabin Shaw" includes Carabin's surname and that Carabin was not connected to CS when CS registered the mark. But Defendants have not alleged facts indicating that "Carabin Shaw" unmistakably pointed to Carabin when it was registered the PTO application in 2015. At that point, Carabin had recently begun her return to the practice of law while CS had been steadily building its practice for two decades. Similarly, Defendants have not pled specific facts suggesting that at the time CS registered its mark, a reasonable person would presume a connection between CS's services and Carabin. If anything, the facts suggest the opposite: Carabin made several public declarations distancing herself from CS after her 2003 departure.

Therefore, Defendants did not plead the facts required to establish a claim for cancellation based on false connection.

### D. Defendants Failed to Plead Cancellation Due to Misrepresented Source

Defendants likewise failed to plead that CS's trademark must be cancelled because it misrepresents the source of CS's services. 15 U.S.C. § 1064 permits cancellation if "the registered mark is being used . . . to misrepresent the source of . . . goods or services." § 1064(3). "A cancellation claim for misrepresentation under § [1064(3)] requires pleading and proof that the registrant deliberately sought to pass off its goods as those of petitioner." 3 McCarthy on Trademarks and Unfair Competition § 20:60 (5th ed.); *see also Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 298 (4th Cir. 2021) ("[Trademark Challenger] was required to show blatant misuse of the mark by [Registrant] in a manner calculated to trade on the goodwill and reputation of [Challenger].").

Defendants' counterclaims plead no facts indicating that CS sought to pass off its services as those of Carabin. In fact, CS contracted for Carabin to publicly distance herself from the firm via the 2003 Stock Purchase Agreement. Because Defendants failed to plead facts entitling them to cancellation based on misrepresented source, this theory must be dismissed.

### E. Defendants Alleged Sufficient Facts for Cancellation Due to Nonconsensual Registration

Defendants' final ground for cancellation is their strongest. Defendants adequately pled cancellation of CS's trademark based on the theory that CS needed her consent to register it.

A court can cancel a trademark if it was obtained contrary to 15 U.S.C. § 1052(c). *See* § 1604. That provision states that a trademark application may be denied if it (1) "[c]onsists of . . . a name . . . identifying a particular living individual" and (2) lacks the individual's written consent. § 1052(c). A mark "identif[ies] a particular living individual" only if "the person is so well known that the public would reasonably assume the connection, or . . . the person is publicly connected

with the business in which the mark is being used." 2 McCarthy on Trademarks and Unfair Competition § 13:37 (5th ed.) (citing *Ross v. Analytical Tech. Inc.*, 51 U.S.P.Q.2d 1269 (T.T.A.B. 1999)).

Defendants have alleged that CS registered "Carabin Shaw" for use in the field of law without Carabin's consent. ECF No. 14 at 4. They also alleged that Carabin is publicly connected with law (and personal-injury litigation in particular) at the time that CS applied for the trademark. *Id*. at 5 (admitting that Carabin registered Carabin Law P.C. in 2010). Thus, she has alleged sufficient facts to make out a claim for cancellation under 15 U.S.C. § 1052 based on nonconsensual registration.

For the foregoing reasons, Plaintiffs' Motion to Dismiss Defendants' counterclaim for trademark cancellation is **GRANTED IN PART** and **DENIED IN PART**. Defendants' claim for trademark cancellation based on theories of fraud, false connection, and misrepresented source are **DISMISSED**. Defendants maintain a claim for cancellation based on a theory of nonconsensual registration.

### III. Defendants Adequately Pled Entitlement to a Declaratory Judgment

Defendants seek a declaratory judgment stating:

(1) CS does not have a valid trademark,

(2) Defendants do not infringe and are not diluting any valid trademark,

(3) CS has no right to use Ms. Carabin's name in connection with their law practice, and

(4) Defendants have the exclusive right to use Ms. Carabin's name in connection with the practice of law.

ECF No. 14 at 17.

The Court has already concluded that Defendants made sufficient factual allegations to support a claim of trademark cancellation. So, Defendants have similarly pled entitlement to a judgment that (1) CS does not have a valid trademark and (2) Defendants are not infringing or diluting a valid trademark.

The Court has also concluded that the Stock Purchase Agreement granted CS rights in "Carabin Shaw" and that claims to the contrary are implausible on their face. So, Defendants failed to plead entitlement to a judgment that (3) CS lacks a right to use "Carabin" and (4) Defendants have the exclusive right to use "Carabin."

Therefore, Plaintiffs' Motion to Dismiss is further **GRANTED IN PART** and **DENIED IN PART**. Defendants' claims for declaratory relief regarding the right to use "Carabin" are **DISMISSED**. Defendants maintain their claims for declaratory relief regarding the validity of CS's trademark.

## IV. Defendants Adequately Pled False Registration Under 15 U.S.C. § 1120

In addition to seeking cancellation of CS's trademark on the basis of fraud, Defendants seek monetary damages under 15 U.S.C. § 1120.

### A. Applicable Law

15 U.S.C. § 1120 states: "Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation . . . shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof." "False" and "fraudulent" are not synonymous. *Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp.*, 158 F. Supp. 277, 278 (D.N.J. 1958). Thus, it is sufficient that the statement was false; no intent to make a false statement is required.

Lastly, the injury requirement under § 1120 notably differs from that of § 1064. The latter provision grants standing to "any person who believes that he . . . will be damaged." § 1052(c). The latter provision grants standing to "any person injured [due to registration] for any damages sustained in consequence thereof." § 1120.  In other words, § 1064 only requires a subjective belief of likely damages while § 1120 requires damages to be "clearly articulated" and "more than merely speculative." 4 McCarthy on Trademarks and Unfair Competition § 31:85 (5th ed.) (collecting cases).

### B.  Defendants Alleged Sufficient Facts Supporting False Registration

Defendants pled several theories of fraud. *See* Part II.B. The Court has already discussed why the factual allegations are insufficient to sustain those claims.

But § 1120 permits recovery in the case of a "false" declaration leading to registration. As stated, Defendants have a viable claim for trademark cancellation based on nonconsensual use of Carabin's name. This is because Defendants alleged that CS falsely stated in its trademark application that "Carabin Shaw" did not include a person's name whose consent is required. Moreover, Defendants have sufficient injury because the trademark that they are challenging is now being enforced against them. *See City of Philadelphia v. EMI Earthmate, Inc.*, No. CIV.A. 04-CV-1904, 2004 WL 2250981, at *3 (E.D. Pa. Oct. 5, 2004) (finding sufficient allegations of standing to survive a motion to dismiss after the plaintiff alleged that the defendant registered a trademark that it did not own).

For the foregoing reasons, Plaintiffs' Motion to Dismiss is **DENIED** with respect to Defendants' claim of false registration under 15 U.S.C. § 1120.

**V.  Defendants Failed to Plead False Designation Under 15 U.S.C. § 1125(a)**

**A.  Applicable Law**

A party may hold a person liable if that person "uses in commerce any . . . name" that is "likely to cause confusion" regarding either (1) the "association of such person with another person" or (2) the "origin, sponsorship, or approval of" services by another. 15 U.S.C. § 1125(a)(1)(A). This provision allows parties to assert infringement over unregistered trademarks. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("[I]t is common ground that [15 U.S.C. § 1125(a)]  protects qualifying unregistered trademarks . . . ."). The purpose of this provision "is to prevent consumer confusion regarding a product's source . . . and to enable those that fashion a product to differentiate it from others on the market." *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1220 (2d Cir. 1987), *overruled on other grounds by Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 585 (2d Cir. 1993). Thus, the Court must faithfully apply the requirement that the use of a mark is "likely to cause confusion." *See* 15 U.S.C. § 1123(a)(1)(A).

**B.  Defendants Failed to Plead Facts Alleging Confusion**

As discussed, Carabin assigned CS the right to use "Carabin Shaw" in the 2003 Stock Purchase Agreement. She is therefore estopped from challenging its use of that name in commerce under 15 U.S.C. § 1125.

Besides, Defendants have not pled facts to support the "likely to confuse" element. They only state that CS's use of "Carabin Shaw" is "likely to cause confusion among consumers [and] ha[s] caused actual confusion among consumers." ECF No. 14 at 19. This is conclusory. The pleadings lack any specific allegations of confusion.

Therefore, Plaintiffs' Motion to Dismiss is **GRANTED** with respect to Defendants' claim of false designation under 15 U.S.C. § 1125. That claim is **DISMISSED**.

## VI. Defendants Failed to Plead Misappropriation of Name or Likeness Under Texas Law

"There are three elements to a misappropriation claim under Texas law: (i) that the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (ii) that the plaintiff can be identified from the publication; and (iii) that there was some advantage or benefit to the defendant." *Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994).

As discussed, Carabin assigned CS the right to use her name. Thus, their use of "Carabin Shaw" cannot qualify as a *mis*-appropriation under Texas law. For this reason, Plaintiffs' Motion to Dismiss is **GRANTED** with respect to Defendants' claim of misappropriation. That claim is **DISMISSED**.

## VII. Defendants Failed to Plead Tortious Interference with Prospective Business Under Texas Law

Tortious interference requires four elements:

(1) a reasonable probability that the plaintiff would have entered into a business relationship;

(2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring;

(3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and

(4) the plaintiff suffered actual harm or damages as a result of the defendant's interference.

*Cooper v. Harvey*, 108 F. Supp. 3d 463, 471 (N.D. Tex. 2015).

To meet the second element, Defendants allege that Plaintiffs "unlawfully us[ed] Ms. Carabin's name to advertise their law firm." As discussed, this claim is contrary to the facts and implausible on its face.

Moreover, Defendants have not pled the third element. Specifically, they did not allege facts to suggest that Plaintiffs used "Carabin Shaw" to prevent Defendants from forming a business relationship that was otherwise likely to occur. The allegation on this element is conclusory. *See* ECF No. 14 at 21 ("A reasonable probably exists that absent [Plaintiffs'] actions, [Defendants] would have entered into additional business relationships . . . .").

Therefore, Plaintiffs Motion to Dismiss is **GRANTED** with respect to Defendants' claim of tortious interference. That claim is **DISMISSED**.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss (ECF No. 16) is **GRANTED IN PART** and **DENIED IN PART**. Defendants' counterclaims of false designation, misappropriation, and tortious interference are **DISMISSED**. Defendants' counterclaims of trademark cancellation, declaratory judgment, and false registration remain pending under the theories specified.

Defendants are **DIRECTED** to file any amended counterclaims or request an extension to do so no later than **November 26, 2025.**

It is so **ORDERED**.

**SIGNED** this 13th day of November, 2025.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE